IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES (INTERNAL REVENUE SERVICE),<br><br>              Appellant,<br><br>v.<br><br>KENT RIES,<br><br>              Appellee. | 2:24-CV-146-Z |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Internal Revenue Service's ("IRS") Appeal from the United States Bankruptcy Court in Bankruptcy Case No. 17-20045-RLJ-7 ("Appeal"), filed July 9, 2024. Having considered the Appeal, briefing, and relevant law, the Court holds that the Bankruptcy Court erred by refusing to grant summary judgment to the IRS on the issue of marshaling. Accordingly, the Bankruptcy Court's denial of summary judgment is **REVERSED**. The Court **GRANTS** summary judgment to the IRS on the issue of marshaling.

**BACKGROUND**

Richard and Ruth Archer ("Debtors") filed Chapter 7 bankruptcy on February 24, 2017. ECF No. 7 at 6. Appellee Kent Ries ("Trustee") is the Chapter 7 trustee. In the filing, Debtors described four parcels of real estate worth over $1.1 million combined. They exempted them from the bankruptcy estate under the Texas Constitution, Article 16, Sections 50 and 51, and Texas Property Code Sections 41.001–.002. ECF No. 1-8 at 12. These parcels are now in Debtors' probate estate. ECF No. 7 at 9–11. The IRS recorded a lien against the Debtors in the country property records for unpaid income taxes. *Id.* at 10. Since filing bankruptcy, both Debtors have passed away, and the estate is now in bankruptcy. *Id.* at 6. Although the Debtors initiated the bankruptcy proceedings in 2017, the Trustee has not yet

1

distributed estate assets to unsecured creditors eight years later. *Id.* at 7. As of September 2023, the gross value of the bankruptcy estate's remaining assets on hand totaled $467,374.00. *Id.* at 6–7.

The IRS has a priority, unsecured claim against the estate for $255,692.98. *Id.* at 6. The IRS contends that 11 U.S.C. Section 726 binds the Trustee to disburse first-priority payment to priority unsecured claims but that the Trustee has disregarded this scheme. *Id.* at 7, 9. The Trustee moved for a marshaling order with the Bankruptcy Court requiring the IRS to satisfy its priority unsecured claim against the exempt, nonbankruptcy assets (particularly the homestead) instead of the bankruptcy assets. *Id.* at 11.

In response, the IRS moved for summary judgment on the Trustee's motion to require the IRS to satisfy its claims against the nonbankruptcy assets. *Id.* at 7. The IRS's partial summary judgment motion invoked three arguments, including that the doctrine of marshaling is not applicable against the IRS. *Id.* The Bankruptcy Court denied the IRS's partial summary judgment motion after oral argument and held that marshaling could apply against the IRS unless it would impose a sufficiently undue burden on the IRS. ECF No. 1-5 at 8–11.

The IRS moved for leave to appeal the Bankruptcy Court's denial of its summary judgment motion on June 28, 2024. ECF No. 7 at 13. It only requested leave to appeal whether the Bankruptcy Court erred as a matter of law in holding that marshaling is not per se unavailable against the IRS. *Id.* at 6; ECF No. 8 at 5. The Court granted leave for interlocutory appeal. ECF No. 3. This appeal followed. After transmission of the complete bankruptcy record on appeal on November 26, 2024, the IRS filed its brief on December 23, 2024. ECF No. 7. The Trustee filed his brief on January 23, 2025. ECF No. 8.

### LEGAL STANDARD

Federal district courts have jurisdiction to hear appeals, with leave, from bankruptcy court interlocutory orders and decrees on cases referred to bankruptcy judges under 28 U.S.C. Section 157.

28 U.S.C. § 158(a)(3). An appeal from a bankruptcy court to a district court is generally modeled after an appeal from a district court to an appellate court. *See id.* § 158(c)(2). The district court reviews the bankruptcy court findings of fact for clear error and findings of law *de novo. ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011). The district court "may affirm if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below." *In re Scotia Pac. Co., LLC*, 508 F.3d 214, 218–19 (5th Cir. 2007) (quoting *Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 245 (5th Cir. 2006)).

The Bankruptcy Court ruled on a summary judgment motion. The Bankruptcy Code requires the same standard for granting summary judgment as does Federal Rule of Civil Procedure 56. *See* FED. R. BANKR. P. 7056. Thus, summary judgment in a bankruptcy court "is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *In re SeaQuest Diving, LP*, 579 F.3d 411, 417 (5th Cir. 2009).

## ANALYSIS

The Trustee in his bankruptcy court marshaling motion contended that the IRS should be subject to marshaling and acquire its owed taxes from the Debtors' exempt property. Marshaling is an equitable doctrine that allows courts to require a creditor who can resort to two or more funds for payment to seek payment from a fund other than the only one that another creditor may access. *See Meyer v. United States*, 375 U.S. 233, 236 (1963) (holding marshaling "rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds" (quoting *Sowell v. Fed. Rsrv. Bank*, 268 U.S. 449, 456–57 (1925))). Because marshaling is an equitable doctrine, it is "designed to promote fair dealing and justice." *Id.* at 237. "Its purpose is to prevent the arbitrary action of a senior lienor from destroying the

3

rights of a junior lienor or a creditor having less security." *Id.* Junior lienholders may not invoke the doctrine if it will impose a detriment on other creditors. *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 331 n.16 (5th Cir. 2007).

Marshaling has three requirements: "(1) a senior creditor with rights to two or more funds in which a common debtor has an interest; (2) a common debtor with an interest in two funds; and (3) a junior creditor with a lien on or interest in only one of the funds in which the common debtor has an interest." 9B AM. JUR. 2D *Bankruptcy* § 1993 (2025). Bankruptcy courts, as courts of equity, can order marshaling even without explicit statutory authority. *See Ferguson v. W. Cent. FS, Inc.*, No. 14-1071, 2015 WL 5315612, at \*5 (C.D. Ill. Sept. 11, 2015) (citing circuit cases); *In re Jack Green's Fashions for Men Big & Tall, Inc.*, 597 F.2d 130, 133 (8th Cir. 1979). Trustees, as hypothetical lien holders, may seek marshaling. *In re Am.'s Hobby Ctr.*, 223 B.R. 275, 287 (Bankr. S.D.N.Y. 1998); 11 U.S.C. § 544(a).

But much dispute centers on whether a Trustee may invoke marshaling against the federal government. On one hand, several circuits have held it may not be invoked against the government. *See, e.g.*, *In re Decker*, 199 B.R. 684 (B.A.P. 9th Cir. 1996); *United States v. Herman*, 310 F.2d 846, 848 (2d Cir. 1962); *In re Ackerman*, 424 F.2d 1148, 1150 (9th Cir. 1970). A range of district courts agree. *See, e.g.*, *Northington v. United States*, No. MO-71-CA-86, 1972 WL 3194, at \*4 (W.D. Tex. June 6, 1972); *United States v. Cohen*, 271 F. Supp. 709, 718–19 (S.D. Fla. 1967); *United States v. Eshelman*, 663 F. Supp. 285, 288 (D. Del. 1987); *First of Am. Bank v. Alt*, 848 F. Supp. 1343, 1351 (W.D. Mich. 1993); *In re Metro. Metals, Inc.*, 50 B.R. 685, 687–88 (Bankr. M.D. Penn. 1985). Yet, on the other hand, some circuit and district courts have applied it against the government. *See, e.g.*, *In re Bame*, 279 B.R. 833, 837–39 (B.A.P. 8th Cir. 2002); *In re Szwyd*, 394 B.R. 230 (Bankr. D. Mass. 2008), *aff'd*, 408 B.R. 547 (D. Mass. 2009); *In re Morahan*, 53 B.R. 489 (D. Me. 1985). These courts argue that the cases

4

declining to apply marshaling against the government are cabined to their facts. They disagree that they establish a per se rule barring marshaling against the government. *See, e.g.*, *In re Szwyd*, 394 B.R. at 237–38. The Fifth Circuit has not decided the question, but as noted, one district court in the circuit has held the doctrine may not be invoked against the United States. *See Northington*, 1972 WL 3194, at \*4– 5 ("The application of the equitable doctrine of marshaling of assets . . . cannot be applied against the United States.").

The Trustee argues that the IRS "offers no statutory basis for [its] desired result of per se immunity." ECF No. 8 at 5. He claims that the IRS's cases are "minimal dicta and phrases." *Id.* But the Trustee goes further. He dismisses the IRS's arguments that requiring it to marshal would be burdensome on tax collection. As support, he bizarrely offers his own anecdotal 27 years on the trustee panel to say that marshaling would not be burdensome because, in his corner of the bankruptcy world, it is infrequent. *Id.* at 6. Instead of contending with the IRS's arguments in good faith, he sneers that the IRS is simply "too lazy and/or incompetent to make an appropriate decision when marshaling is raised in litigation." *Id.*

The IRS argues that because it holds a first-priority claim against the bankruptcy estate, it is entitled to collect under the bankruptcy statutes if it so chooses. The IRS points to the mandatory priority distribution schemes in the Bankruptcy Code and argues those cannot be overridden by an equitable doctrine, "even in rare cases." ECF No. 7 at 13. Allowing marshaling to override the Bankruptcy Code would ignore the priority statute and "would impermissibly burden the United States' collection of federal revenue." *Id.* at 13–14.

This Court holds as a per se matter that the doctrine of marshaling may not be applied against the federal government when it seeks tax revenue. This is so for two main reasons: First, the Bankruptcy Code does not permit it. Second, the Anti-Injunction Act does not permit it because it would impose an

unacceptable judicial restraint on the collection of federal revenue not contemplated by the tax or bankruptcy statutes.

### I. The Bankruptcy Code Priority Statutes

The IRS first argues that the Bankruptcy Code's priority schemes do not permit marshaling against the IRS. In summary, it argues that "the Bankruptcy Code grants certain claims priority treatment in distribution." *In re Chesteen*, 799 F. App'x 236, 239 (5th Cir. 2020) (internal citations omitted). Section 726, it notes, states that a bankruptcy court "shall" follow its prescribed order of distribution to unsecured creditors. 11 U.S.C. § 726(a). The IRS explains that courts may not deviate from this distribution scheme even in the "rare case" where declining to marshal "would produce an unfair result." ECF No. 7 at 15. Because the IRS filed a claim — and that claim is ranked higher under the Bankruptcy Code than the other claims — the IRS argues the bankruptcy court may not force it to acquire its payment elsewhere.

The Trustee does not meaningfully contend with the IRS's statutory argument. He simply avers that the IRS's Bankruptcy Code argument is "misplaced and irrelevant" because neither he nor the bankruptcy court is asking the IRS to "waive its claim . . . or its priority status." ECF No. 8 at 7. Instead, he merely prefers the IRS to pursue its lien on the Debtors' real estate *first*. Invoking pragmatism instead of law, he reasons that because the lien can "accrue penalties and interest" and the bankruptcy claim cannot, the IRS should want the more financially favorable result. *Id.* In his opinion, the fact that the IRS "would rather spend taxpayer funds litigating this case, versus litigation to collect on its debt, is puzzling and disturbing." *Id.*

But the IRS is correct. Title 11, Section 726 of the Bankruptcy Code does not permit the application of marshaling against the federal government when it seeks tax payments. Section 726 states, in relevant part, that the "property of the estate *shall* be distributed — (1) first, in payment of

6

claims of the kind specified in, and in the order specified in, section 507 of this title." 11 U.S.C. § 726(a) (emphasis added). Section 507 specifies the order of claims that Section 726(a) requires to be paid first. It demands that "allowed unsecured claims of governmental units, only to the extent that such claims are for" a variety of taxes be paid eighth in order. 11 U.S.C. § 507(a)(8). Combined, these two statutes require priority unsecured tax claims to be distributed out of the estate's property before any other unsecured claim.

The Supreme Court has construed these sections. It explained that the "Code . . . sets forth a basic system of priority." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 457 (2017). "Special classes of creditors, such as those who hold certain claims for taxes or wages," come before "low-priority creditors, including general unsecured creditors." *Id.* (citing 11 U.S.C. §§ 507, 726(a)(1), (2)). This order is not negotiable. Rather, the "Code makes clear that distributions of assets in a Chapter 7 liquidation *must follow* this prescribed order." *Id.* (emphasis added). The Code states that the property "*shall* be distributed" in this order. 11 U.S.C. § 726(a) (emphasis added). Lest bankruptcy courts seek ways to avoid this priority, the Court left no room for doubt: "In Chapter 7 liquidations, priority is an absolute command—lower priority creditors *cannot receive anything* until higher priority creditors have been paid in full." *Czyzewski*, 580 U.S. at 464 (emphasis added).

In *Czyzewski*, the Court even addresses the "rare case" where equity might counsel deviating from the priority scheme. 580 U.S. at 469. The Court worried that the "rare case" would soon become "a more general rule." *Id.* (citing Frederick F. Rudzik, *A Priority Is a Priority Is a Priority—Except When It Isn't*, AM. BANKR. INST. J., Sept. 2015, at 79 ("[O]nce the floodgates are opened, debtors and favored creditors can be expected to make every case that 'rare case.'")). Even a bit of deviation from Congress's commands, no matter the equitable aim, can have "potentially serious" consequences. *Id.* The Court would not let the exception swallow the rule. It concluded that "Congress did not authorize

7

a 'rare case' exception" to its priority scheme. *Id.* at 471. Congress carefully balanced all considerations when it fashioned the priority scheme and a court "cannot 'alter the balance struck by the statute.'" *Id.* (quoting *Law v. Siegel*, 571 U.S. 415, 427 (2014)).

The marshaling doctrine far predates the Bankruptcy Code. The Chancery courts of England invoked the doctrine in the 1700s to provide for a more equitable distribution of funds from those in bankruptcy. *See Lanoy v. Duke & Duchess of Athol* (1742) 26 Eng. Rep. 668, 669; 2 Atk. 444, 446. It continued, of course, in American jurisprudence. Bankruptcy courts continue to apply it in certain scenarios. *See In re Oxford Dev., Ltd.*, 67 F.3d 683, 687 (8th Cir. 1995) (quoting *In re Jack Green's Fashions for Men—Big & Tall, Inc.*, 597 F.2d 130, 133 (8th Cir. 1979) ("Federal courts of bankruptcy are courts of equity and may apply the doctrine of marshaling in proper cases.")). But congressional enactments override equitable doctrines if a conflict arises. When Congress enacts a mandatory scheme, a court of equity may not skirt those requirements by invoking an equitable doctrine. *Cf.* Michael T. Morley, *The Federal Equity Power*, 59 B.C. L. REV. 217, 221 (2018); John Harrison, *Federal Judicial Power and Federal Equity Without Federal Equity Powers*, 97 NOTRE DAME L. REV. 1911, 1911 (2022) ("[Equitable remedies] is a body of sub-constitutional law, subject to change by Congress when it exercises one of its enumerated powers.").

But that is what a bankruptcy court does when it invokes marshaling against an IRS priority unsecured claim. Fundamentally, marshaling directs the creditor to go elsewhere for the funds. If a senior and junior creditor seek payment from the same funds — but the former has other options — the latter prevails. In the bankruptcy context, that often means the senior creditor must acquire payment from outside the bankruptcy estate. Here, that is exactly what the Trustee seeks. In such a situation, marshaling, in essence, means a creditor with a valid claim in the bankruptcy goes away in whole or part. It is as if that creditor's claim is no longer wholly or partially in the bankruptcy estate. Congress

8

says the claims *shall* be paid in the order it prescribes. But marshaling against the IRS effectively changes that to a "*may*" — supplanting statutory text with an equitable doctrine.[1] A bankruptcy court turns to its discretion and, instead of disbursing per the priority scheme, points the IRS elsewhere.

The Trustee attempts to avoid this conclusion. He argues that he is "not asking the IRS to waive its claim . . . or its priority status." ECF No. 8 at 7. Instead, he "is merely requesting the IRS to pursue its lien on the [Debtors'] real estate first." *Id.* In his view, if the IRS does not achieve full recovery on its claim from the exempt resources, "then the IRS can recover any deficiency as a priority claim in the bankruptcy case." *Id.* However, by asking the bankruptcy court to marshal against the IRS, he is doing more than "requesting" the IRS to look to the real estate first. He is asking the bankruptcy court to *bar* IRS recovery from the bankruptcy estate until it can recover from other avenues. That means the IRS must engage in other processes before recovering what the Bankruptcy Code says it "shall" receive. 11 U.S.C. § 726(a). The bankruptcy court has the power to disburse the bankruptcy estate. But it cannot resolve valid, priority unsecured IRS claims against the estate by pushing the IRS to nonbankruptcy funds. That is tantamount to ordering payment of priority claims with nonbankruptcy money. The Trustee asks this Court to ignore the obvious statutory divergence in the interests of "fairness and justice." ECF No. 8 at 6. Equitable doctrines like marshaling do much to promote fairness and justice. *See Meyer*, 375 U.S. at 237. But when Congress prescribes an order of claim disbursement with mandatory language, it removes the bankruptcy court's discretion to deviate for mere equitable reasons.

Lest misperception ensue, the holding here is narrow. On this statutory argument, the doctrine of marshaling may seem wholly inapplicable in bankruptcy proceedings and claims governed by the priority scheme of 11 U.S.C. Sections 725 and 726. Indeed, the doctrine of marshaling in bankruptcy has been called into question elsewhere. *See In re Packard Props., Ltd.*, 112 B.R. 154, 157–58 (Bankr.

---

[1] Here, "'shall' means" not "may" but "unambiguously means *must*." *Texas v. United States*, 555 F. Supp. 351, 363 (S.D. Tex. 2021) (Tipton, J.) (quoting 8 U.S.C. § 1231(a)(2)).

N.D. Tex. 1990) (noting the narrowness of marshaling because of its "inherent problems . . . in the bankruptcy context"); Averch & Prostok, *The Doctrine of Marshaling: An Anachronistic Concept Under the Bankruptcy Code*, 22 U.C.C.L.J. 224 (1990) (arguing that marshaling should not be applied in bankruptcy because it makes the process confusing and unpredictable); Moses Lachman, Note, *Marshaling Assets in Bankruptcy: Recent Innovations in the Doctrine*, 6 CARDOZO L. REV. 671, 672 (1985) (arguing that marshaling should not be applied to aid unsecured creditors). Practically, "the provisions of the bankruptcy code such as equitable subordination, avoidance of statutory liens, preference law, fraud transfers, and creditor plans ensure equity and make marshaling unnecessary." *In re Packard Props.,* 112 B.R. at 158 (citing Averch & Prostok, *supra* at 244). But the Court declines to reach that far in this case. Rather, on this basis, a Trustee representing unsecured creditors may not seek to marshal against a government agency like the IRS with a valid, priority, unsecured tax claim in a bankruptcy estate.

## II. Anti-Injunction Act and IRS Burden

The IRS argues that the Anti-Injunction Act also prevents marshaling against the IRS. The Anti-Injunction Act states that, with enumerated exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The Supreme Court explained that the "manifest purpose of [Section] 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Enoch v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962). It protects "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial intervention." *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974).

The IRS argues that the Anti-Injunction Act "expressly prohibits" bankruptcy courts "forcing the IRS to seek to satisfy its bankruptcy claim against non-estate property" because "the Trustee is effectively attempting to restrain the IRS's ability to collect the tax that it is entitled to collect from the bankruptcy estate." ECF No. 7 at 22. In response, the Trustee cites *Szwyd*. 394 B.R. 242 (Bankr. D. Mass. 2008). *Szwyd* held, as the only court anywhere to do so, that marshaling did not "restrain the IRS's tax collection efforts." ECF No. 8 at 15. Rather, marshaling "in fact encourag[ed] such efforts." *Id.* (citing *In re Szwyd*, 394 B.R. at 248). In explanation, the *Szwyd* court concluded that the "more relevant and persuasive line of cases" found that the Bankruptcy Code overrode the Anti-Injunction Act because it "is a 'complete scheme governing bankruptcy which overrides the general policy' embodied in the Anti-Injunction Act." *In re Szwyd*, 408 B.R. 547 (quoting *Bostwick v. United States*, 521 F.2d 741, 744 (8th Cir. 1975)).

Most courts disagree with *Szwyd* and deem its holding that the Bankruptcy Code supersedes the Anti-Injunction Act to be "in the clear minority." *In re Horstemeyer*, No. AP 15-80182, 2015 WL 6739721, at *2 (Bankr. D.S.C. Nov. 4, 2015). The majority view recognizes that some Bankruptcy Code provisions would *seem* to implicitly override the Anti-Injunction Act. *Id.* (citing Sections 105(a) and 505 as examples). But ultimately, they fail to "in light of: (1) its unequivocal language; (2) its oft-amended statutory exceptions that do not include an exception for bankruptcy courts; and (3) the failure of any bankruptcy code provisions explicitly providing for bankruptcy courts to enjoin IRS collection efforts." *Id.* (citing *In re Becker's Motor Transp., Inc.*, 632 F.2d 242, 246 (3d Cir. 1980) (Congress has not included bankruptcy in Anti-Injunction Act exceptions); *In re LaSalle Rolling Mills, Inc.*, 832 F.2d 390, 394 (7th Cir. 1987); *In re J.J. Re-Bar Corp.*, 644 F.3d 952, 945–55 (9th Cir. 2011) (holding a debtor could not "avoid or forestall" through bankruptcy because it "would violate the policy of the Anti-Injunction Act")). Many of the courts affirming the minority view rely on *Bostwick v. United*

*States*, which held the Bankruptcy Code overrode the Anti-Injunction Act. 521 F.2d 741, 744 (8th Cir. 1975). However, the Eighth Circuit later limited *Bostwicks*'s reasoning. *See A to Z Welding & Mfg. Co., Inc. v. United States*, 803 F.2d 932, 933 (8th Cir. 1986) (holding that a bankruptcy court's injunction of the collection of taxes against officers of a debtor corporation was barred by the Anti-Injunction Act); *see also In re John Renton Young, Ltd.*, 87 B.R. 635, 638 (Bankr. D. Nev. 1988) (observing that "the cases which have held that the Anti-Injunction Act did not bar relief by the bankruptcy court have either been reversed or have relied upon cases which have been reversed").

The Anti-Injunction Act allows no exceptions for a bankruptcy court to raise hurdles to tax collection. Its clear language does not hint at an exception. It has been amended often, and Congress never added an explicit bankruptcy exception. And the Bankruptcy Code itself never explicitly permits bankruptcy courts to hinder IRS tax collection efforts in this way. *See In re Am. Bicycle Ass'n*, 895 F.2d 1277, 1279–80 (9th Cir. 1990) (even though 11 U.S.C. Section 105(a) appears to be "all encompassing," it is not as "specific and unequivocal" as the Anti-Injunction Act). So the argument that the specific Bankruptcy Code overrides the generalized Anti-Injunction Act also fails.

Rather, the Anti-Injunction Act eliminates any "judicial intervention" that disrupts the IRS's ability "to assess and collect taxes alleged to be due." *Enoch*, 370 U.S. at 7. The Court declines to engage in the "policy balancing" featured in minority, largely discredited cases. *Prisco v. I.R.S.*, No. 1:13-MC-0066, 2013 WL 6004183, at *4 (N.D.N.Y. Nov. 13, 2013).

The anti-marshaling courts agree. The Second Circuit refused to "subject the government to a requirement that it marshal[] assets in favor of junior lienors, as this would create an extreme burden on collection of the revenue, *unauthorized by statute*." *United States v. Herman*, 310 F.2d 846, 848 (2d Cir. 1962) (emphasis added). The Ninth Circuit agreed. In *Ackerman*, it held "that a junior lienholder cannot invoke the marshaling doctrine" against the United States. 424 F.2d 1148, 1150 (9th Cir. 1970). The

court there recognized that a "contrary holding would create a substantial burden, *unauthorized by statute*, upon the collection of federal revenue." *Id.* (emphasis added).

The Trustee disputes and distinguishes these circuit precedents using a familiar tool, maybe his only tool: *Szwyd*. He reasons that *Szwyd* deems cases like *Ackerman* to be "based on the facts of the case." ECF No. 8 at 12 (quoting *In re Szwyd*, 394 B.R. at 237) (emphasis omitted). But reading *Ackerman* disabuses a reader of this interpretation. The *Ackerman* court noted there was "some dispute about the quick sale value" of the property that the bankruptcy court would have forced the IRS to turn to had it imposed marshaling. 424 F.2d at 1150. That dispute is arguably relevant to measuring the burden the IRS would endure had it been forced to marshal. Yet, the court there decided it "need not resolve" that dispute. *Id.* Instead, it flatly and per se held marshaling may not be invoked against the United States when collecting taxes.

Had the Trustee identified analyses in these cases of marshaling burden on the IRS, he might have an argument that the cases turned on the unique facts. But none do. In *First of America Bank West Michigan v. Alt*, the court held "there exists no 'right of marshalling' [sic] against the United States." 848 F. Supp. 1343, 1351 (W.D. Mich. 1993). "A junior lienholder cannot compel the IRS to marshall [sic] its liens." *Id.* No analysis of the burden. The Western District of Texas did the same and explained that a federal statute bars the burdens imposed on the IRS through marshaling. *Northington v. United States*, No. MO-71-CA-86, 1972 WL 3194, at *4 (W.D. Tex. June 6, 1972) ("The application of the equitable doctrine of marshaling of assets to give relief to junior lienors in this case would impose an intolerable and unnecessary burden, *unauthorized by statute*, on the collection of federal revenue and *thus* cannot be applied against the United States." (emphasis added)). No analysis of the burden. It continued and flatly held that the "Government is not required to seek its taxes from any particular source." *Id.* "The remedy is in legislation," *Id.* Similarly, *United States v. Cohen* analyzed relevant

13

federal statutes to hold that "the line of cases refusing to apply the doctrine of marshaling assets [against the United States] [were] more convincing." 271 F. Supp. 709, 718 (S.D. Fla. 1967). No analysis of the burdens in that case. The only hint of burden analysis in *Cohen* is that they reinforced the per se ruling it advanced. *Id.* (explaining its analysis refusing to apply marshaling against the United States "especially . . . in view of the equities appearing in the instant case"). One last example. *United States v. Eshelman* also flatly agreed that "there is no right of marshaling against the United States." 663 F. Supp. 285, 288 (D. Del. 1987). Again, no analysis of whether the facts revealed an impermissible burden should marshaling be invoked.

The Trustee cravenly claims the IRS counsel's arguments reveal a "betrayal of their agency name (the Department of Justice)." ECF No. 8 at 10. Not so. The IRS's arguments fit the majority of the caselaw available. The Court is not persuaded by the Trustee's brief, which misreads and misinterprets the preponderance of the relevant caselaw.

Here, the Anti-Injunction Act bars marshaling against the IRS. The Anti-Injunction Act specifically bars any suit "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). As shown, bankruptcy proceedings generally fall under this definition. *See In re Am. Bicycle Ass'n*, 895 F.2d at 1281; *In re Heritage Vill. Church & Missionary Fellowship, Inc.*, 851 F.2d 104, 105–06 (4th Cir. 1988); *In re J.J.*, 644 F.3d at 945–56 (9th Cir. 2011). Marshaling against the IRS would restrain the collection of a tax. By forcing the IRS's claim out of the bankruptcy estate, the IRS would have to initiate proceedings against the Debtors' property.

The Trustee admits that marshaling may *sometimes* burden the IRS's tax collection efforts. ECF No. 8 at 6 (noting that the IRS would have to "fil[e] a lawsuit, or even fil[e] a probate claim or send[] a demand letter"). But these are, in the Trustee's eyes, "simple actions." *Id.* And he notes that courts have "recognized marshaling could impose a burden on the IRS revenue collection process." *Id.* at 8. He

would instead have a court weigh the relative burden on a case-by-case basis. Nowhere does the Anti-Injunction Act permit a court to weigh the level of burden. The Anti-Injunction Act did not leave burden assessment in a court's hands. Instead, its language bars proceedings "for the purpose of restraining" tax collection. 26 U.S.C. § 7421(a). Marshaling does just that. No matter *how much* it restrains. The Trustee may be correct that the IRS could easily proceed against the Debtors' property. They might even receive more if they did. But that is not a court's decision to make. The IRS holds discretion on how to best collect the taxes owed. *See Cash v. United States*, 961 F.2d 562, 567 (5th Cir. 1992) (holding the IRS has discretion under 26 U.S.C. Section 6331(b) to seize or sell property); 26 U.S.C. § 7403(a) (the IRS "may" enforce liens it holds); *In re Process Pipe Fabricators, Inc.*, No. 06-10536, 2009 WL 1227715, at *8 (Bankr. N.D. Okla. May 1, 2009) ("The IRS is under no duty to sell the property immediately, but is instead allowed to use its discretion . . . ."); *Babcock v. United States*, 807 F. Supp. 2d 904, 912 (C.D. Cal. 2009) ("[I]t is clear that the courts should give the IRS broad authority to implement and regulate the collection of taxes.").

Demanding that the IRS seek its revenue outside the bankruptcy estate hinders its collection as a per se matter — even if enforcing the lien would be simple. This violates the Anti-Injunction Act's plain text. That is an example of the very "judicial intervention" the Supreme Court's reading and enforcement of the Anti-Injunction Act bars. *Enoch*, 370 U.S. at 7. It is a prime example of limiting "the Government's need to assess and collect taxes as expeditiously as possible." *Bob Jones Univ.*, 416 U.S. at 736. Even more, marshaling here would force the IRS to act on its lien against the Debtors' property. But, as a statutory matter, that decision lies with the IRS. When the statute says "may," the bankruptcy court cannot bar the IRS from one source of funds, order it to pursue another source, then force it to act on the other lien.

A bankruptcy court cannot bar the IRS from one source of funds, tell it to go to its other source, and force its hand to act on the lien when the statute says "may." 26 U.S.C. § 7403(a); *cf. Wardell v. I.R.S.*, No. Civ. 95-6131, 1995 WL 775757, at *1 (D. Or. Oct. 20, 1995) ("[C]ollecting federal income taxes . . . is the government's sovereign function.").

Because the Court has held a bankruptcy court may not apply marshaling against the United States on two different grounds, it need not address the tangled sovereign immunity concerns the IRS presents here. *See Northington*, 1972 WL 3194, at *5 ("Further, the United States has not waived its sovereign immunity to suit for an action forcing it to marshal assets in the collection of revenue . . . ."). Even more, the Supreme Court is set to illuminate the contours of sovereign immunity in 11 U.S.C. Sections 106 and 544 in the context of IRS and bankruptcy trustee disputes. *See* Petition for Writ of Certiorari at I, *United States v. Miller*, No. 23-824 (U.S. Jan. 2024).

### CONCLUSION

Accordingly, the Court holds that a bankruptcy court may not, as a per se matter, invoke the equitable remedy of marshaling against the United States in a tax collection case. The Court **GRANTS** summary judgment to the IRS on the issue of marshaling. The Bankruptcy Court's denial of summary judgment is **REVERSED**.

**SO ORDERED**.

February _10_, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

16